<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW KLUGER, | : |
| Petitioner, | : Civil Action No. 14-6236 (KSH) |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

**<u>HAYDEN, District Judge</u>:**

Petitioner Matthew Kluger, confined at FCI Morgantown in Morgantown, West Virginia, has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, challenging on grounds of ineffective assistance of counsel the judgment and sentence imposed by this Court in *United States v. Kluger*, No. 11-cr-0858, ECF No. 49 (D.N.J. entered June 4, 2012) ("Crim. Dkt."), after he pleaded guilty to securities fraud, conspiracy to commit money laundering, and obstruction of justice. For the reasons stated below, the Court denies the motion.

**I.     FACTUAL BACKGROUND**

This case involved what the government described as one of the longest-running insider trading schemes ever investigated and prosecuted in the United States. Along with Garrett Bauer, a trader, and Kenneth Robinson, an accountant, Kluger conceived and executed a scheme that began in 1994, while he was a law student employed as a summer associate, and continued up until the conspirators' arrests in 2011. During his career as an associate at different premier

national law firms located in New York City and Washington, D.C.,[1] Kluger passed on confidential client information regarding mergers and acquisitions to Robinson, who then passed on the information to Bauer, for the express purpose of executing favorable stock trades using the confidential non-public information, allowing the three men to realize massive financial gains. The scheme was successful because Kluger, the tipper, and Bauer, the trader, had no personal connection or relationship with one another—each knew Robinson personally, but only knew the other as a nameless participant in the conspiracy. With Robinson as the middleman, the three were able to avoid detection because direct evidence that the massive trades executed by Bauer were the result of information Kluger supplied never came to light. After Robinson's own finances caught the attention of the authorities, he agreed to cooperate with the government. In conversations Robinson secretly recorded, Kluger instructed him about how to destroy evidence of their guilt, along with making many incriminating statements that exposed the conspiracy.

Faced with this damaging evidence, Kluger pled guilty—even in the instant petition he readily admits to his guilt. *See* Kluger's second declaration, ECF No. 27-1 at 1-2 ("From the time of my arrest, it had been my desire to accept responsibility and the fair and reasonable consequences for my actions."). He pled to a four-count information charging him with (1) conspiracy to commit securities fraud, (2) securities fraud, (3) conspiracy to commit money laundering, and (4) obstruction of justice for instructing Robinson to destroy evidence. *See* ECF No. 21-8. The plea agreement did not contain any stipulations as to sentencing. The Court rejected Kluger's arguments for a downward variance, and sentenced him to a within-guidelines sentence

---

[1] While working at Washington, D.C., Kluger resided in Oakton, Virginia.

of 144 months, which was affirmed on appeal.[2] *See United States v. Kluger*, 722 F.3d 549 (3d Cir. 2013).

In his motion Kluger submitted sworn declarations from his co-defendant Bauer, ECF No. 16, and Kaim Bodek, an expert on electronic trading, ECF No. 17, in support of his main claim of ineffective assistance of counsel on grounds that venue was improper. To rebut Kluger's venue claim, the government submitted the declaration of Alan L. Zegas, Esq., Kluger's plea counsel and co-counsel on his direct appeal, which recounts in detail venue discussions he had with Kluger during his representation. ECF No. 21-10.

## II.     STANDARD OF REVIEW

A prisoner in federal custody may move the sentencing court "to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, because a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless

---

[2] The Court sentenced Kluger to 60 months' imprisonment for count one, and 144 months each for counts two through four, and made all sentences concurrent. *See* Crim. Dkt., ECF No. 49 at 2.

they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

### III. DISCUSSION

Kluger claims trial counsel failed to investigate and thereby discover that this Court lacked venue to adjudicate any of the charges he pled guilty to. He also claims counsel failed to object to the fact that the government did not establish the factual basis necessary to establish his guilt with regard to the obstruction of justice offense. Had counsel conducted adequate investigation and informed him of these defenses, he asserts, he would have insisted on going to trial. Based on the Court's review of the record, neither claim is meritorious.[3]

**A. Standard for Ineffective Assistance of Counsel Claims**

The sixth amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Under the familiar standard, this means the right to the effective assistance of counsel, and counsel can deprive a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction

---

[3] Overall, Kluger asserts that "[t]rial counsel rendered Mr. Kluger ineffective assistance in violation of his Sixth Amendment right to counsel when he: (1) misadvised Mr. Kluger to enter into a plea agreement; (2) misadvised him that the minimal contacts the government alleged in its Criminal Complaint were sufficient to establish venue in New Jersey; (3) failed to advise him that he had a venue defense to the charges because venue did not lie in New Jersey; (4) failed to advise him that he had a factual defense to the Count 16 obstruction of justice charge; and (5) failed to advise him that there was a reasonable probability that he would be acquitted on all counts if he were to go to trial. Trial counsel's advice was deficient because, in fact, venue was not proper in New Jersey and, if Mr. Kluger had gone to trial, there is a reasonable probability that he would not have been convicted. Mr. Kluger was preju[]diced by this misadvice (a) because, had he been properly advised, he would not have pled guilty and instead would have insisted on going to trial, (b) because he entered guilty pleas that were not knowing and voluntary, and (c) because this misadvice affected the very framework within which the case against Mr. Kluger proceeded." ECF No. 3 at 9. Viewed as a whole, the motion raises the two claims summarized above, and the other claimed deficiencies derive from them.

4

has two components, both of which must be satisfied. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 687-90. The court must determine whether, in light of all the circumstances, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S.Ct. 1081, 1083 (2014) (per curiam). Second, the defendant must show that he suffered prejudice due to the alleged ineffective assistance. However, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S.Ct. at 1083.

The same two-part *Strickland* standard, described above, is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014). The defendant must also show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

### B. Lack of Venue

Kluger argues that trial counsel failed to discover that the District of New Jersey was not the proper venue to adjudicate any of the offenses he was charged with, leading to a structural error in his criminal proceeding. As such, Kluger claims he is relieved from establishing the prejudice prong of the *Strickland* analysis.

But Kluger is raising an ineffective assistance of counsel claim, not a substantive improper venue claim. A claim that is actually premised on lack of proper venue, the Court agrees, is a claim of structural error. *See United States v. Auernheimer*, 748 F.3d 525, 539 (3d Cir. 2014). However, this is not such a case, because venue was established when Kluger waived any venue defense he might have had by pleading guilty to the information. *See* information, ECF No. 21-8 at 1 ("The defendant having waived in open court prosecution by indictment and any objections to *venue* . . . .") (emphasis added); *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010) (entry of guilty plea waives any claim of improper venue). Thus, there was no structural error to be unearthed and acted upon. Kluger's claim is really about how counsel's allegedly erroneous advice induced him to waive a putative venue defense as part of the plea agreement. In effect, he is challenging the knowing and voluntary nature of his guilty plea, which must be analyzed through the familiar two-part *Strickland* test of reasonableness and prejudice.

Kluger offers two explanations about why, if provided with effective assistance of counsel, he would have insisted on going to trial. First, he argues that had he been advised that venue was improper, he would have chosen to proceed to trial, and the jury would have acquitted him based improper venue, and after the acquittal he could not be prosecuted again based on double jeopardy. *See* Kluger's first declaration, ECF No. 1-6 at 6.

Unpacking this, as the government correctly notes there is no caselaw holding that a finding of improper venue triggers double jeopardy protection. Indeed, every circuit court that has opined on this issue came to the opposite conclusion. *See United States v. Hernandez*, 189 F.3d 785, 792 (9th Cir. 1999) (finding that a judgment of acquittal was not the proper remedy for improper venue, and therefore retrial was not barred by the double jeopardy clause); *United States v. Miller*, 111 F.3d 747, 755 (10th Cir. 1997) ("[D]ismissal for lack of venue does not involve issues of double

6

jeopardy nor bar prosecution in the proper venue."); *Haney v. Burgess*, 799 F.2d 661, 663 (11th Cir. 1986) (finding that retrial of a defendant whose conviction was reversed because of improper venue would not violate the double jeopardy clause); *accord United States v. Saavedra*, 223 F.3d 85, 95 n.1 (2d Cir. 2000) (Cabranes, J., dissenting) (noting, while disagreeing with majority's finding of venue, that "if we had vacated defendants' convictions [for improper venue], the Double Jeopardy Clause of the Constitution would not bar reprosecution of the defendants in the Eastern District of New York."). *See also Lee v. United States*, 432 U.S. 23, 30 n.8 (1977) ("[A] trial court's ruling in favor of the defendant is an acquittal only if it actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged" (internal quotations and citation omitted)). The Court need not credit Kluger's incorrect assertion of law as a basis to establish actual prejudice. *See Cooley v. Brooks*, No. 07-0285, 2009 WL 959870, at *10 (W.D. Pa. Apr. 8, 2009) (finding that a petitioner's own erroneous belief of the law did not sustain an ineffective assistance of counsel claim).

Kluger's second basis for prejudice arises from his contention that venue was proper in the Southern District of New York ("SDNY"), and that he would have received a more favorable outcome there. In his declaration, Kluger details his concerns about having his case tried in New Jersey, including his reservations about this district's expertise, or lack thereof, in handling insider trading matters when compared to SDNY. He believes that he would receive a more favorable sentence in SDNY, or avoid prosecution altogether, because the prosecutors there might consider his case unimportant when compared to other insider trading cases they bring. ECF No. 27-1 at 2, 5. Putting aside whether this speculative belief could constitute cognizable prejudice, Kluger's explanation is flawed because even if venue did not lie here, he had no control over where else re-prosecution would occur. As described above, and Kluger does not dispute this, venue was also

proper in the Eastern District of Virginia. In Zegas's declaration, he explains that Kluger did not want to be prosecuted there, because "the trial might be unduly accelerated." ECF No. 21-10 at 3. Kluger does not explain why he would have insisted on going to trial when there was a real possibility that retrial would occur in a district he did not prefer, nor does he explain why he preferred the Eastern District of Virginia to the District of New Jersey. Moreover, as the government contends, had Kluger rejected the plea offer, he still could have faced additional charges, and he would not have received a lower offense level based on acceptance of responsibility, all of which would have exposed him to a longer sentence. *See United States v. Sanders*, 208 F. App'x 160, 163 (3d Cir. 2006) ("[A] prosecutor does not violate due process when he threatens serious charges to induce a guilty plea[.]").

Faced with uncertainty regarding the potential alternative venue, the potential additional charges against him, and the potential increase in sentence, Kluger does not explain how he would have ignored these concerns and rejected the plea agreement, purely on the basis of a venue defense in this district.[4] Curiously, he asserts that "the issue is not whether he was likely to be convicted in another district; the issue is whether he was likely to have prevailed in New Jersey with a lack-of-venue defense." Reply, ECF No. 27 at 19. But the issue has been and still is whether he would have pleaded guilty and waived any venue defense—under circumstances where he could have decided to accept venue as part of the plea agreement even if venue were improper.

---

[4] The government further contends that (1) had Kluger rejected the plea offer, further investigation would have occurred to bolster its case, including venue; and (2) even if venue was improper for some charges, the government would have insisted on proceeding with those charges where venue was proper; (3) Kluger cannot show that even if this case were prosecuted in another district, he would have received a shorter sentence; (4) the record shows that Kluger would have pled guilty regardless of the existence of a venue defense, because he readily admitted guilt and was eager to cooperate with the government. These are all valid arguments, although not relied on by the Court, that highlight the speculative nature of Kluger's claim.

8

Significantly, venue was proper in the District of New Jersey, certainly for the most serious charges of insider trading. In the original criminal complaint, the government set out the factual basis for venue, alleging that the stock trades initiated by Bauer through NASDAQ and Goldman Sachs were electronically executed by computer servers located in New Jersey. *See* ECF No. 21-2 at 9-10. In *United States v. Goldberg*, 830 F.2d 459 (3d Cir. 1987), the Third Circuit dealt with an analogous fact pattern. Ronald Goldberg was convicted in the Eastern District of Pennsylvania for wire fraud, specifically for the act of issuing a check withdrawing funds from an account of his corporation when he knew the account did not have sufficient funds to cover the check. He accomplished this, after making the withdrawal, by conducting a chain of wire transfers in quick succession on multiple accounts, ending with the funds released by the bank being deposited into an account in the Bahamas. By the time the bank realized that the corporate account did not have enough money to cover the withdrawal, its funds were already wired offshore.

One of Goldberg's transactions was a wire transfer from Chemical Bank in New York City to Wilmington Trust in Wilmington, Delaware. He asserted that Eastern District of Pennsylvania was the improper venue to charge him for this transaction, arguing there cannot be venue there for a bank transfer from New York to Delaware. Relying on 18 U.S.C. § 3237, which states that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed," the Third Circuit held that venue was proper in the Eastern District of Pennsylvania, because "the wire transfer of funds from New York to Wilmington . . . passed through the Federal Reserve Bank in Philadelphia." *Goldberg*, 830 F.2d at 460-65.

Here, Kluger does not dispute the allegations in the criminal complaint that the stock trades were executed by computer servers in New Jersey. As such, the crime began in New York where

9

Bauer initiated his trades, and it was completed in New Jersey by the computer servers located there. These facts are even stronger than those in *Goldberg*, because the transactions did not simply "pass through" this district, but were actually completed here.

Kluger makes the untenable argument that the transactions were completed the moment Bauer initiated the trades at his computer terminal in New York, but common sense tell us otherwise. In *Cordance Corp. v. Amazon.com, Inc.*, 639 F. Supp. 2d 406, 424-25 (D. Del. 2009), the district court described a similar transaction using a credit card, and held the transaction was completed only when the payment request had been cleared by a payment server and a unique receipt number generated to verify the transaction. It strains credulity for any of the conspirators, professionals all, to argue that they genuinely believed a trade was "completed" the moment it was initiated on Bauer's terminal. Bauer did not initiate the trades on his computer and then simply hope for the best—he expected them to be completed. He would not have been able to do so without the computer servers in New Jersey, just as the wire transfer could not have been completed in *Goldberg* without the Federal Reserve Bank in Philadelphia. As the government argues in its brief, "[g]iven that the entire purpose of the scheme was to transact in shares of stock using inside information, the actual purchase of those shares—which was executed via New Jersey computers—was certainly material to the offense." Answer, ECF No. 21 at 50. Even assuming, arguendo, the Court accepts Kluger's argument that a trade was completed as soon Bauer initiated it, a botched trade that never reached the server would nonetheless render the conspirators guilty of insider trading. This would be the worst of all worlds for the conspirators, as they might be guilty of even more crimes according to Kluger's theory.[5]

---

[5] Indeed, in a hypothetical where the FBI conducted a sting operation against the conspirators, and intercepted all of Bauer's trade requests before they were executed, Kluger's theory renders them

Kluger cites to case law from the Second Circuit holding that venue is proper only if it was foreseeable to the defendant that his criminal act would begin, continue, or be completed in the prosecuting district. But foreseeability was not a factor considered by the Third Circuit to find venue in *Goldberg*—it only mattered that the criminal transaction passed through the Eastern District of Pennsylvania. Kluger does not cite to any Third Circuit law holding that foreseeability is a necessary element to establish venue.

Furthermore, it was arguably foreseeable that the trades could be executed in New Jersey. In both of their declarations, while Bauer and Bodek emphatically assert Kluger had no knowledge that Bauer's trades would be executed in New Jersey, the conspirators knew that Bauer's trades would be executed by a server somewhere, and there is no indication that they cared where the server was located, a fact made clear by Bodek's declaration. ECF No. 17 at 4 ("Bauer neither had any control nor was he responsible for choosing servers or otherwise influencing the underlying server-related process."). As the government points out, Bauer attaches a written agreement between him and Goldman Sachs Execution and Clearing ("GSEC") that outlines the trading services to be provided *and* the address for GSEC—in Jersey City, New Jersey. Answer, ECF No. 21 at 54. Whether the conspirators cared or not, it was certainly foreseeable that the trades executed by GSEC could be executed in New Jersey. As such, the Court rejects Kluger's argument and finds that venue was proper for the insider trading charges. Where these belated venue challenges have so little merit, as the government puts it, trial counsel "could not have been ineffective for not raising them." Answer, ECF No. 21 at 48.

---

guilty of *both* the substantive insider trading crime as well as a conspiracy to commit insider trading, even though no trades ever actually executed and the public suffered no harm.

Having established venue for the insider trading charges, assuming that venue was not proper on the other charges of money laundering and obstruction of justice, and Kluger was so advised, he has failed to establish that he would have rejected the plea deal.  As he concedes, he pled guilty to the obstruction of justice charge despite believing that he had viable defenses for that count.  *See* ECF No. 27-1 at 4-5 ("Knowing that I had virtually no defense on the merits of the case, other than with regard to the obstruction of justice counts, . . . I elected to enter into a plea agreement[.]").  As for the money laundering charge, its base offense level was the same as the insider trading charge, so it made little sense to try them separately.  *See* U.S.S.G. § 2S1.1(a)(1) (base offense level for a money laundering charge is "the offense level for the underlying offense from which the laundered funds were derived[.]").  Kluger's own affidavits and the record of this case strongly suggest that his main concerns in this motion relate to the insider trading charges; he has failed to support an argument that improper venue as to the other charges, assuming it existed, affected his plea decision.

Moreover, because Kluger received concurrent sentences for all counts, the insider trading offenses represented the full extent of his sentencing exposure.  "Under the concurrent sentence doctrine, a court has 'discretion to avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent.'"  *Parkin v. United States*, 565 F. App'x 149, 152 (3d Cir. 2014) (quoting *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997)).  Accordingly, the Court finds that counsel was not ineffective, and even if the Court were constrained to credit Kluger's arguments on the other charges, under these circumstances it would exercise its discretion to limit the analysis to the venue issue on the insider trading charges.  Kluger suffered no prejudice, and relief is denied.

### C. Obstruction of Justice Charge

As found above, Kluger concedes that he pled guilty to this charge despite knowing he had possible defenses, so the Court rejects his challenge to the knowing and voluntary nature of his plea on this charge. To the extent he argues that counsel was ineffective for failing to investigate and raise the defense in the first place, that claim is foreclosed by *Tollett v. Henderson*, 411 U.S. 258 (1973). When a defendant enters into a counseled, intelligent, and voluntary plea agreement, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* at 267; *see United States v. Whitmer*, 505 F. App'x 167, 173 (3d Cir. 2012). By pleading guilty, Kluger waived his right to raise an affirmative defense at trial and to bring claims of ineffective assistance of counsel relating to counsel's failure to discover those defenses prior to the guilty plea. *See Miller v. Janecka*, 558 F. App'x 800, 803 (10th Cir. 2014) (finding a claim of inadequate investigation by counsel prior to the plea, which did not challenge the validity of the plea itself, was waived); *Ghani v. Holder*, 557 F.3d 836, 839 (7th Cir. 2009) (holding an ineffective assistance of counsel claim alleging counsel's failure to raise an affirmative defense based on the lack of an indictment had been waived by the guilty plea, because it did not challenge the voluntary and intelligent nature of the plea itself); *Lupinacci v. New Jersey*, No. 13-5578, 2015 WL 505880, at *4 (D.N.J. Feb. 6, 2015) (holding that *Tollett* barred claims of ineffective assistance of counsel that occurred prior to the plea agreement and were not related to the voluntary nature of the plea).

As a practical matter, the government points out that Kluger's contentions specifically relate to one of the obstruction counts in the complaint, that of destroying his cell phone and computer, because the government had no evidence to support the charge. Thus he claims he had a factual defense that wasn't raised. The government's opposition is persuasive here. "Zegas's

performance in this respect would have been deficient only if there was no way for the Government to prove the obstruction charge to which Kluger actually pled guilty: obstructing, and attempting to obstruct, the grand jury's investigation of insider trading in specific securities . . . ." Answer, ECF No. 21 at 58. Even if the government lacked evidence that Kluger destroyed his cell phone and computer, there was plenty of other evidence of obstruction—had counsel raised a factual defense, it would have been futile. Accordingly, relief on this ground is denied.[6]

### D. Certificate of Appealability

An appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255 unless a certificate of appealability issues upon a finding that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and the Court declines to issue a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

---

[6] The Court notes that Kluger does not raise a substantive claim on this charge—that the government had failed to establish the factual basis of this charge in the plea agreement or at the plea hearing—so the Court need not address the sufficiency of the plea itself. *See* Fed. R. Crim. P. 11(b)(3); *United States v. Days*, 416 F. App'x 182, 184 (3d Cir. 2010); *see also United States v. Thomas*, 286 F. App'x 779, 780 n.2 (3d Cir. 2008) ("This issue could have been and should have been raised on direct appeal, but was not, and is waived.").

14

## IV.  CONCLUSION

For the reasons set forth above, Kluger's motion is DENIED and the Court denies a certificate of appealability.

<u>s/ Katharine S. Hayden</u>
**Katharine S. Hayden, U.S.D.J.**

Dated:  August 30, 2018